My name is Beth Mary Bollinger. I am here representing William O'Dell, the defendant in this action. I'd like to save or try to save a minute for rebuttal. And the status, there's a – I've raised the issue of whether the conviction itself is legitimate, and then there's also a sentencing issue. The sentencing issue I'm submitting on the briefs. It is an important issue to Mr. O'Dell. He did serve time and is finished with a boot camp, a six-month boot camp period of time, but if we were to succeed on the sentencing issue, it could affect his home detention and the period of home detention, so we do continue to raise that. But the main issue here is whether the conviction itself should stand. I inherited this case at sentencing. I was not the original trial counsel. And when I inherited the case and was looking through the materials and was looking through a myriad of testimony from my client, because he had testified at a couple trials, he had a guilty plea hearing, he had a guilty plea statement, I kept looking at it and saying, should he be convicted of this crime? Your Honor, I think – and I think one of the main reasons I say that, and I've raised the argument in the sense of a void for vagueness, was it applies to Mr. O'Dell. Mr. O'Dell is a drug distributor, drug distributor meaning of cold pills to convenience stores. Counsel, the defendant pled guilty here, didn't he? He did. How can that issue still be available to him since he pled guilty? You know, I actually think that's – to me, I understand what you're saying because the case law says when somebody pleads guilty, they waive the right to a void for vagueness. But when you look at the case law that says that that's the – that that's the typical process, it's because what they're saying is under those kinds of guilty pleas, we're never going to really know whether something's void for vagueness or not. We're never going to get enough information to know the whole story. And that's where I think that we're very distinguishable, because this was ad nauseum. You got the story out from the government's point of view through my own client as the witness with everyone saying that he was absolutely very truthful. The judge found him to be very credible, as did the prosecutor, as did the – you know, I had the – not DEA, but one of the agents got on the stand to talk about how truthful he was. So I think that that's – I understand your question, but I think it's a red herring when you look at the reason why those things – why those normally would not be a void for vagueness – a void for vagueness would no longer exist when you've entered a plea of guilt. This is just an unusual case. It's just different because of how many times he's presented the story of events. And I think that that – I do agree that there's a case – Tell me what's the distinction you're making. Well, my understanding – You agree the general principle is that if you plead guilty, you waive void for vagueness. Right. And the reason that you waive – There's an exception, which is? The reason you – it's void for vagueness is because there's not enough information before the district court, before the trial court, as to whether or not the evidence taken as a whole would be void for vagueness as applied to this defendant. Because void for vagueness is typically as applied to this defendant, not done in a vacuum. And what they're saying is there is no opportunity to go beyond a vacuum and just make the – you know, say it's void for vagueness in a vacuum. Because in a guilty plea, the person just stands up, they say very specific information, and then you don't really have the whole story. In this case, there happens to be this longer version that goes on and on with several different – you know, two different trials where his statements – it becomes questionable whether his statements, when taken as a whole, as to whether he reasonably – because he sits up before the court and he's – when he's – his guilty plea, and he says, I – I believed – I was very concerned. I was – I was – I thought that we were dealing excessive amounts. And the judge says, you mean a reasonable person would believe that that – those were excessive amounts? And my client at the guilty plea hearing corrects the judge and says, no, excessive to me. Like, he really personalizes, this was my perception of – of – of what was going on. Then, as the evidence comes out through his different testimonies and – and through pre-sentence report, et cetera, et cetera, the question then becomes, boy, did the judge take a guilty plea for something that this guy wasn't guilty of? Was that a mistake? And I guess that would be the second reason I'd say that, in this circumstance, the – the guilty plea can be reevaluated because of the judge then saying, well, we're turning to the – to the prosecutor and saying, is this a subjective standard? And the prosecutor's saying, yeah, it's a subjective standard. And, in fact, there was – so there was no application from an objective standpoint. And I just think that when somebody goes in to plead guilty because he feels morally responsible for behavior, but it turns out that his behavior is not of the sort and kind that – that we intend to – to be punishing under this law. And that's really the question I've raised here, that we shouldn't hold him to a standard that the – that may have been misapplied by the court. Do you have a case that supports that exception, or is this the case? I actually thought I cited to this issue when I dealt with that on pages – let's do – Did you cite U.S. v. Burke for that proposition? I think that was the case, yeah, that I cited for that proposition. And there's a Sixth Circuit case that I – that talks about, you know, because it's not sufficiently developed being the problem. I'm sorry, Your Honor, I don't have that – that page number. So counsel, let me see if I understand your position. You're – you're asking us to hold that a defendant who pleads guilty may nevertheless preserve a challenge to the statute if he or she makes a full disclosure about the circumstances surrounding the charged crime. Is that what you're asking us to hold? I think I'm saying that the void for – the typical void for vagueness being waived after a guilty plea is – is that this is an exception to that rule. And that – and, yes, I suppose – but not under any – just any circumstance. I mean, in this case, the government presented his testimony in the light most favorable to them. They got as much information out of him as possible at these – at these other hearings. And it's like the proof is in the pudding. The more they heard in this case, the more evidence that was submitted and the more my client spoke about what he meant by saying he was pleading guilty may – brought up the questions. Now, I will say that all of these circumstances – I wouldn't say I'm suggesting the standard rule, because I do have also the judge relying on subjective intent when taking the guilty plea. So that brings the whole, you know, did he take – did he apply the wrong standard of law when accepting the guilty plea. And there's also a colloquy between the guilty plea judge and my client in which she says – in which Judge Whaley says, Mr. O'Dell, are you sure you won't plead guilty? Because I'm getting a hesitation from you. I'm not – you know, and that also – I think you take all those circumstances together. I think that you have a standard rule about void for vagueness, and I think that this is an exception to that rule. And I was just looking – So, Counsel, when you cited Burke, you recognized that Burke says that a guilty plea constitutes a waiver of all constitutional claims that might have precluded the prosecution from establishing factual guilt. But you say this is an exception to Burke. You haven't cited a case that – Well, actually, United States v. Skinner, I'd have to re-look at the case. But I – Right. And what I also say, the reason that I say that Burke – I think Burke creates its own exception, because Burke says the test is not whether the statute is vague in the abstract, but whether it is vague as applied in the particular circumstances of the case. And so Burke actually creates its own exception. It says the reason we're creating this rule about the guilty plea is because you're not going to get to the facts of the case. And that is the exception to this rule, because you got to the facts of the case. Not only did you get to the facts of this case, but you got to them through my client saying, I want myself to be guilty. I want to be guilty. Now, he was very truthful. He would not say things that were not true. I mean, he would not say that he absolutely was in agreement, that there was any agreement of conspiracy between he and his co-defendants. His co-defendants were acquitted. And, frankly, I read his testimony, and I think in part they were acquitted because of his testimony. As truthful and forthright as it was, it did not establish a crime. And if it didn't establish a crime, I think there's a problem with accepting a guilty plea under those circumstances and all the circumstances I've described. Okay. Why don't we hear from the government, and then we'll hear from you in rebuttal. I took up all my time. Thank you. Good morning, Your Honors. Ani Ahmed for the United States. Your Honors, I'm going to start with a proposition, although I don't waive it, that Mr. Pellant did waive the argument as far as after the plea of guilty, did waive the vagueness argument. I'm going to start with the proposition that he did not. Now, during his colloquy with a district court judge when he did submit his guilty plea, he indicated to the judge that he was aware and did distribute the pseudofedrin after he was aware that it was being used to manufacture methamphetamine. Any hesitation that he had as far as a judge asking, do you have any hesitation with this plea, Mr. O'Dell responded that his only hesitation was recalling all the specific facts that led him to believe or have a reasonable cause to believe that he, in fact, knew or had reasonable cause to believe that the product was being used to manufacture methamphetamine. And, Your Honor, that's a supplement or record on page 101. He had a subjective belief, and that's what the government asked the court to use during his guilty plea based on Sappho, subjective belief, what he had, what knowledge and circumstances that he knew of that his product was being used to distribute methamphetamine. And that's exactly what the judge asked him. Did you distribute it after you knew that it was being used to manufacture methamphetamine? And the defendant responded yes. So there are many relevant factors in this case that indicate that he did know, rather than just having a reasonable cause to believe, which the statute puts out, he did know, first of all, not only just the excessive amounts of pseudoephedrine that he was selling, it was his largest producing product. And he wasn't just a drug distributor, Your Honors. He was in the business of supplying convenience stores with any type of product with the exception of alcohol and tobacco. He provided it. It was just his biggest product that he sold, and just one specific brand of pseudoephedrine, Action brand pseudoephedrine. Now, the defendant became aware, and this is in the expert records, Your Honor, I believe it's on page 82 to 85, where he testifies at Mr. Rash and Mr. Porter's trial. He's asked a specific question. Did you know that this product was being used to manufacture methamphetamine before you distributed your first pill of pseudoephedrine? And he said yes. In fact, before he got his license as a registrant to distribute the pills, he was informed by DEA Diversion, this product is being used to manufacture methamphetamine. In fact, in April of 2001, when Jan Flannery comes and visits him, someone from DEA Diversion, she notifies him, your product, Action brand pseudoephedrine. I don't believe she identified it by lot number, but she certainly identified it by product. Your product is being found at methamphetamine laboratories. There are certain examples of the incessant phone calls he gets from convenience stores. They're not asking for toothpaste or combs or anything like that. They're asking for Action brand pseudoephedrine. He makes deliveries to a house, a garage, not to the convenience store. The clerks ask him, don't put this on the invoice. The clerks pay him or the owners of these convenience stores pay him with cash, large amounts of cash. In fact, there's a process, and if you look in his guilty plea, he points out to this, and he also points out to this in Mr. Rash and Mr. Porter's trial. He says, you know what, there were a lot of times, and I paraphrase here, that Mr. Porter would just come to my house and pick up the pseudoephedrine. I didn't have to do anything. I would make my profit, and Mr. Porter would go sell the pseudoephedrine. Any other product that Mr. Porter would pick up? No, just the pseudoephedrine. So he was aware of what this product was being used for before he even sold one pill. And to come up now and to say, well, it's vague, well, certainly Mr. O'Dell is a person of ordinary intelligence. Certainly he knew what conduct was prescribed by the statute. He was told that on multiple occasions by the DEA. In fact, he was asked during trial who was responsible to regulate the distribution of this product. He admitted the DEA told him he was. So it's somewhat disingenuous for Mr. O'Dell now to say, well, I didn't know what I was pleading to. The plea took the subjective standard. And, Your Honor, I do want to quote one case, and I did not cite it in my brief. However, appellant's counsel was aware of this case. In fact, I believe there was a request to stay the hearing based on a petition for a hearing on this case. It was recently decided by the Ninth Circuit in the last month, I believe, month and a half. That's the Cower case, United States v. Cower. And the Court in that case stated, well, there's also a subjective and an objective standard to deciphering A41C2. Not like in Sappho. Sappho used pretty much a subjective standard. The Court actually in Sappho said it's akin to knowledge. Now, appellant pointed out in her brief, well, akin to knowledge means knowledge. No, absolutely not. If Congress intended for the statute to be limited to just knowledge, they wouldn't have said, or Congress wouldn't have said, knowing or having a reasonable cause to believe. In Cower, and I understand that Cower was more of a jury instruction case, but the Court actually recognized when the district court gave the instruction of reasonable cause to believe, they incorporated both a subjective and an objective element in that the facts and circumstances then known to the defendant would alert a reasonable person that that product was being used to manufacture methamphetamine. And certainly during the appellee's or within the appellee's brief, there were several examples that Mr. O'Dell was aware that this product was being used to manufacture methamphetamine. Any questions? If not, thank you. You've saved about a minute. I'm sorry. You have saved about a minute. Thank you. What I would say is, first of all, it's a subjective and objective standard. There has to be both. Both needs to be met, not just a subjective belief. And that I do believe is United States v. Cower, and that's the part that I'm saying. He may feel that he was guilty of a crime subjectively, and he may have had reason to believe that that subjective intent is not sufficient. There also has to have that objective belief. Now, the other thing that I think is really important in this case is to parallel the concept of reason to believe one thing versus reason to believe another. You have reason to believe that these drugs might be used for down the line by three or four people down from you, might be used for methamphetamine, but he had also a reasonable cause to believe that it would not. And he did take steps. He showed his house to the DEA agent, whether or not Mr. Porter came to his house to pick up the ephedrine. He was holding his materials in his garage. That's why Mr. Porter came to his house to pick up the ephedrine. The DEA agent came to his house and came to his garage to look through the material when she was the diversion agent. He asked all kinds of questions. He used invoices. He used an accountant. He showed his the DEA person had told him that convenience store owners were the ones who were really watching out for diversion. I have all those things listed in the brief. And they're really, really important things. And I know I've, like, probably run completely out of time. But I would ask that that's a crux of the matter, is reasonable cause to believe that there may be some methamphetamine, but there's also real reasonable cause to believe that he was conducting himself according to the law. Thank you very much. Thank both of you for your argument. The case of United States v. O'Dell is now submitted for decision. The next case on the argument panel is Shart v. Payne. When you're ready, counsel. Thank you, Your Honor.  Thank you.
judges: Alarcon, W. Fletcher, Rawlinson